RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDALL SUTTON,

*Defendant-Appellant.*

No. 16-5587

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:05-cr-00090-1—David L. Bunning, District Judge.

Argued: April 26, 2017

Decided and Filed: July 10, 2017

Before: SUHRHEINRICH, BATCHELDER, and STRANCH.

---

## COUNSEL

**ARGUED:** Steven R. Jaeger, THE JAEGER FIRM PLLC, Erlanger, Kentucky, for Appellant. Nicholas Maynard Parker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Steven R. Jaeger, THE JAEGER FIRM PLLC, Erlanger, Kentucky, for Appellant. Charles P. Wisdom, Jr., Callie R. Owen, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.

## I. INTRODUCTION

In 2005, Defendant Randall Sutton committed four armed bank robberies in quick succession in Kentucky and in Ohio. Defendant agreed to plead guilty to the Kentucky charges in the Southern District of Ohio and the case was properly transferred from the Eastern District of Kentucky to the Southern District of Ohio pursuant to Rule 20 of the Federal Rules of Criminal Procedure. Although Defendant pleaded guilty to the Ohio charges in the Southern District of Ohio, he never formally entered a guilty plea to the Kentucky charges, but was nevertheless sentenced in the Southern District of Ohio as if he had. No one seemed to notice, however—not the defendant, not the government, not the district court—until five years later, when Defendant filed a motion in the Southern District of Ohio to vacate under 28 U.S.C. § 2255, challenging his conviction and sentence on the Kentucky charges on the ground that he never pleaded guilty to those charges. The Southern District of Ohio vacated Defendant's conviction and sentence on the Kentucky charges and transferred the case back to the Eastern District of Kentucky, where he was arraigned and then entered a not guilty plea, nearly eleven years after he had been indicted. He then filed a motion to dismiss, alleging that his speedy trial rights had been violated under both the Speedy Trial Act (STA), 18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment, which the Eastern District of Kentucky court denied.[1] The question is whether this oversight violated Defendant's rights under either the STA or the Sixth Amendment.

---

[1]The case on appeal is from this decision of the district court of the Eastern District of Kentucky. Where not otherwise specified, references to "district court" refer to this district court.

## II. BACKGROUND

On July 27, 2005, Defendant robbed a bank in Fort Wright, Kentucky, while brandishing a firearm, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c)(1).[2]  In September and October 2005, he robbed three banks in Ohio, while brandishing a firearm, all in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c)(1).  On December 14, 2005, Defendant was indicted by a federal grand jury in the Eastern District of Kentucky for the Kentucky armed bank robbery (the Kentucky case).  He was in custody in Ohio at that time.  A week later, on December 21, 2005, a federal grand jury in the Southern District of Ohio indicted him for the Ohio robberies and related firearms offenses (the Ohio case).

On November 1, 2006, Defendant agreed to plead guilty to two Ohio charges, one count of armed robbery in violation of § 2113(a) and (d), and one count of brandishing firearms in violation of § 924(c)(1).  In that plea agreement Defendant also agreed to waive jurisdiction pursuant to Rule 20 of the Federal Rules of Criminal Procedure[3] and enter a guilty plea to one additional count of armed bank robbery and one additional count of brandishing a firearm charged in the Kentucky case.  He signed a statement of facts that included facts for both crimes. ID# 883.

On February 15, 2007, Defendant entered a guilty plea to two bank robbery counts in the Ohio case.  At that time Defendant agreed to the factual statement as read before the court, which included the Kentucky offense.  ID# 871.  Defendant was willing to also plead guilty to the Kentucky charges, but the district court decided to wait until the Rule 20 paperwork was completed before accepting Defendant's guilty plea to the Kentucky charges.  On May 4, 2007, Defendant signed the requisite Rule 20 consent form to transfer the Kentucky charges to the Ohio court. Accordingly, the Kentucky case was transferred to the Southern District of Ohio and consolidated.  That form reflected Defendant's desire to "plead guilty to the offense charged, to

---

[2]He was also charged with violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm during a bank robbery, and forfeiture.

[3]Federal Rule of Criminal Procedure 20 allows a prosecution to be transferred from the district where the indictment is pending to the district where the defendant is arrested, held, or present if the defendant states in writing that he wishes to plead guilty in the district where the indictment is pending and consents to disposition by the transferee court, and files the statement in the transferee district, and the United States attorneys in both districts approve the transfer in writing.  Fed. R. Crim. P. 20(a).

consent to the disposition of the case in the Southern District of Ohio . . . and to waive trial in the above captioned District," i.e. the Eastern District of Kentucky.  ID# 10.

But Defendant never actually pleaded guilty to the Kentucky charges after the case was transferred.  Nonetheless, he was sentenced on both the Ohio and Kentucky charges on August 29, 2007, in the Southern District of Ohio.  He received concurrent terms of eleven years on both the bank robbery charges (one in the Ohio case and one in the Kentucky case), and consecutive terms of seven years for the Ohio § 924(c) charge and twenty-five years for the Kentucky § 924(c) charge, for a total of forty-three years.  Despite never actually entering a guilty plea to the Kentucky charges, Defendant did not object at the time of sentencing or during his direct appeal.  The court and the government did not catch the error either.  On April 19, 2012, after his discretionary appeal to the United States Supreme Court was denied, Defendant collaterally attacked his conviction and sentence pursuant to 28 U.S.C. § 2255 in the Southern District of Ohio.  On October 6, 2013, while the motion to vacate was pending, Defendant filed a "Supplemental Memorandum," asserting for the first time his right to a speedy trial.  *See United States v. Sutton*, No. 05-cr-183, Doc. No. 206, at 7-10 (S.D. Ohio Oct. 6, 2013).

On September 30, 2015, the Southern District of Ohio court vacated his conviction and sentence on the Kentucky charges.  The district court did not address Defendant's speedy-trial argument, because it could not under Federal Rule of Criminal Procedure 20.  *See United States v. Sutton*, No. 05-cr-183, Doc. 211 (S.D. Ohio Sept. 30, 2015).  In that same order the Southern District of Ohio court gave Defendant "the opportunity to enter a valid plea to the Kentucky charges, consistently with his plea agreement."  *Id.* at ID# 1667.  After status conferences on October 9, 2015, December 11, 2015, and December 16, 2015,[4] during which time Defendant apparently mulled over the offer, the Ohio court transferred the case back to the Eastern District of Kentucky on December 23, 2015.  This transfer order stated that the case was being transferred back to the Eastern District of Kentucky for disposition because Defendant did not enter a guilty plea.  ID# 806.  On January 20, 2016, the Eastern District of Kentucky court ("district court") held a status conference and appointed counsel for Defendant.  On February 18,

---

[4]Both defense counsel and the government stated at oral argument that it was their belief that Defendant rejected the plea on December 16, 2015.

2016, Defendant entered a not guilty plea to the Kentucky charges and trial was scheduled for April 18, 2016.

On February 26, 2016, Defendant filed a motion to dismiss the indictment, arguing that the STA clock began ticking on February 15, 2007, the date he pleaded guilty to the Ohio charges, or August 29, 2007, the date he was sentenced on both the Ohio and Kentucky charges. Under either of these start dates, the seventy-day limitation of the STA was easily exceeded. The United States countered that the proper start date for STA purposes was January 20, 2016, the date Defendant first appeared before the Eastern District of Kentucky.

On April 27, 2016, the district court denied Defendant's motion, rejecting both sets of dates for calculating compliance with the STA. R. 129. First, the district court rejected Defendant's suggestion that the STA clock began running during one of his appearances in the Ohio court because (1) the Sixth Circuit held in *United States v. O'Dell*, 154 F.3d 358, 360, 362 (6th Cir. 1998), that the plain language of 18 U.S.C. § 3161(c)(1) requires a not guilty plea, and Defendant never entered a plea of not guilty to the Kentucky charges during any Ohio appearance; and (2) the Ohio court would not have had jurisdiction to try him had he pleaded not guilty, because Rule 20(c) requires the transferee court to return the case to the court "where the prosecution began" if the defendant pleads not guilty after the transfer. *See* Fed. R. Crim. P. 20(c).

The district court also rejected the United States' argument that the STA clock started running on January 20, 2016, when Defendant first appeared for a status conference in the Eastern District of Kentucky (by that time he had entered a not guilty plea on January 18, 2016). Although the government's argument appeared to fit within the language of § 3161(c)(1), the district court noted that the Sixth Circuit applies a different rule when a defendant enters a guilty plea that is later vacated on a collateral attack. *United States v. Bond*, 956 F.2d 628, 631 (6th Cir. 1992), holds that § 3161(e), which provides that the seventy-day period shall begin running from "the date the action occasioning retrial becomes final," applies in cases where the district court has vacated the conviction and sentence it previously imposed. Thus, § 3161(e) requires the STA clock to begin running on the "date that the district court vacated the . . . guilty plea." *Id.* at 632.

Nonetheless, the district court found the rule difficult to apply in the present case, because the court vacating Defendant's conviction and sentence—the Ohio court—only had jurisdiction pursuant to Rule 20. Thus, "the date the action occasioning retrial becomes final" would be September 30, 2015, when the Ohio court granted Defendant's § 2255 motion. But, the district court determined that this could not be the start date for the STA because Rule 20 required the Ohio court to return the paperwork to the Kentucky court, and the Kentucky court did not regain jurisdiction over Defendant's case until December 23, 2015, the date on which the Rule 20 paperwork was returned. The district court analogized to situations where an appeals court vacates a guilty plea, and held that the STA clock starts the day the district court receives and files the mandate. Under either interpretation, the STA clock does not begin to run until jurisdiction is restored to the district court. Thus, the court reasoned that the STA clock in this case began ticking on December 23, 2015.

With December 23, 2015 as the starting point for computational purposes, the May 2, 2016 trial date was outside of the seventy-day limitations period. However, Defendant had filed a motion to dismiss on February 26, 2016, which was heard on April 12, 2016, and taken under advisement thereafter, until the court issued its order on April 27, 2016. Thus, under § 3161(h)(1)(D) (delay resulting from pretrial motion through the conclusion of the hearing is excludable) and § 3161(h)(1)(H) (delay of up to thirty days while any proceeding is under advisement is excludable), the time period from February 26, 2016 through the date of the order, April 27, 2016, was excluded from the calculation. Thus, the STA clock paused on February 26, 2016, or at sixty-five days, leaving five days of the seventy-day limitation remaining. The May 2, 2016, trial date fell within the seventy-day limitation.

Following the denial, Defendant decided to be re-arraigned so that he could change his plea to guilty. R. 130. On April 28, 2016, he pleaded guilty to count two of the Kentucky indictment, charging him with brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1). ID# 949. Defendant preserved his right to appeal the denial of his motion to dismiss. At sentencing, the district court sentenced Defendant to twenty-five years to run consecutive to the Ohio case, the same sentence he was given originally. This appeal follows.

## III.  ANALYSIS

On appeal Defendant claims that his rights to a speedy trial were violated under both the STA and the Sixth Amendment.  We review questions of law related to speedy-trial violations de novo and questions of fact for clear error.  *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994).  The remedy for a STA violation is dismissal with or without prejudice.  18 U.S.C. § 3162.  We use the same standards when reviewing a speedy trial right challenge under the Sixth Amendment.  *See United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007).  The remedy for a Sixth Amendment speedy-trial violation is dismissal with prejudice.  *Id*. (citation omitted).

### A.      Speedy Trial Act Claim

Several sections of the STA are relevant, although, as the district court observed, the unique facts of this case do not precisely align with any one section.  First, the STA requires a district court to dismiss charges unless the defendant's trial begins within seventy days of the filing of the indictment or the defendant's arraignment, whichever occurs later.  18 U.S.C. § 3161(c)(1).  However, the seventy-day limitation is subject to excludable periods for matters such as pretrial motions.  *Id.* § 3161(h).  Additionally, § 3161(c)(1) applies only if a not guilty plea has been entered.  *O'Dell*, 154 F.3d at 360-62; *see also United States v. Lopez-Valenzuela*, 511 F.3d 487, 490 (5th Cir. 2007).

The STA also provides that "[i]f the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final."  18 U.S.C. § 3161(e).  This court has held that "section 3161(e) properly applies in cases where a trial court vacates a guilty plea."  *Bond*, 956 F.2d at 631.

On the other hand, if the defendant initially enters a guilty plea or nolo contendere and subsequently withdraws it, "the defendant shall be deemed indicted . . . on the day the order permitting withdrawal of the plea becomes final."  § 3161(i).  Thus, for STA purposes, the day a defendant withdraws his guilty plea becomes the day of his indictment.  *Id*.; *United States v.*

*Robertson*, 260 F.3d 500, 503 (6th Cir. 2001); *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000); *Bond*, 956 F.2d at 630.

This case falls somewhere between these provisions. As the court noted in *Bond*, a "literal reading" of the STA makes it "clear that Congress did not specifically contemplate cases where a defendant's guilty plea was later vacated by the trial court," *Bond*, 956 F.3d at 630, let alone a case where he thereafter enters a not guilty plea.

The district court determined that § 3161(c)(1) did not apply based on *O'Dell*. In *O'Dell*, the defendant entered a guilty plea that the district court subsequently found unenforceable. The court then allowed the defendant to withdraw his guilty plea and set the case for trial (the 1993 case). *O'Dell*, 154 F.3d at 359. The United States later dismissed the information and indicted the defendant two months later on same charges (the 1994 case). This time the defendant pleaded not guilty to the indictment at his arraignment. *Id.* at 359-60. He then filed a motion to dismiss based on the STA. The district court held that ninety-three days of nonexcludable delay had passed. Sixty-three of those days included delays in the 1993 case. *Id.* at 360. This court reversed, holding that "[t]he plain meaning of the language of the STA require[d] a not guilty plea to begin the clock running," and because the defendant "did not enter one nor was one entered for him during the 1993 case . . . the STA clock was not triggered during the 1993 case." *Id.* at 360, 362 (citing 18 U.S.C § 3161(c)(1)). Absent the sixty-three days, there was no STA violation. *Id.*

As the district court noted, Defendant did not enter the not guilty plea to the Kentucky charges during any of his appearances in the Southern District of Ohio and the Southern District of Ohio never had jurisdiction to try Defendant. Thus, the district court correctly looked to *O'Dell* in concluding that § 3161(c)(1) does not apply here. In *O'Dell*, the nonexcludable delay in the 1993 case could not be counted in the 1994 case because the 1993 indictment had been dismissed and the case was no longer before the court (until re-indictment in 1994). In this case, the Kentucky charges were effectively dismissed when the Southern District of Ohio vacated Defendant's guilty plea, which simultaneously deprived that court of jurisdiction over the Kentucky charges by virtue of Rule 20.

As this court observed in *O'Dell*, the not guilty plea requirement of § 3161(c)(1) is designed "to conserve judicial resources by avoiding unnecessary trial scheduling in cases where it is more likely that the defendant will plead guilty or nolo contendere," *O'Dell*, 154 F.3d at 360, and also "to conserve prosecutorial resources" by obviating the need to prepare for a potential trial until the defendant has entered a not guilty plea, *id*. at 361.  These purposes would be subverted if we applied § 3161(c)(1) in the manner suggested by Defendant.

Defendant argues that because he "ultimately" entered a not guilty plea in the Eastern District of Kentucky on February 18, 2016, the district court erred in ruling that § 3161(e) and not § 3161(c)(1) applies.  In other words, because he eventually pleaded not guilty, the STA applied, and under § 3161(c)(1), the STA clock was triggered on either June 27, 2007 (the date on which the Kentucky charge became effective and therefore the de facto indictment date) or August 27, 2007, when he made his first appearance in the Ohio court.  In support he relies on *United States v. Lopez-Valenzuela*, 511 F.3d 487, 490 (5th Cir. 2007).  There the Fifth Circuit found "no basis . . . from the text of § 3161(c)(1) for utilizing the date of a not guilty plea as the commencement date of the seventy-day period.  The statute provides only two dates that can start the clock: the date of the indictment or the date the defendant has appeared."  *Id*. at 490.  That court concluded that the not guilty plea "determines only *whether* the time restrictions apply.  It does not determine *when* the clock starts."  *Id*. at 490.

But that rule must be read in the context of its facts.  In *Lopez-Valenzuela*, the defendant had signed a form entry of his not guilty plea on the same day that he was indicted.  The government knew of the form, but the defendant did not actually file it until months later.  *Id.* at 488.  The Fifth Circuit concluded that the STA clock began running on the date of his indictment, which was later than his initial appearance, under § 3161(c)(1), and that the STA was violated because he was not tried within seventy days.  *Id.* at 491-92.  The Fifth Circuit determined that because the defendant had first appeared pre-indictment, the speedy-trial clock began to run on the date of the indictment, "regardless of the date he ultimately pleaded not guilty."  *Id*. at 491.  The Fifth Circuit affirmed the view that the STA applies "in any case in which a not-guilty plea is entered," explaining that "prosecutors should expeditiously schedule an arraignment or otherwise obtain a plea early in the proceedings in order to determine whether

the case will be subject to the time limitations in the Speedy Trial Act." *Id.* Critically, the *Lopez-Valenzuela* defendant entered his not guilty plea at the very outset when he signed the form entry, and not after he had pleaded guilty, was sentenced, and served time in prison.

Defendant also claims that his case is analogous to *United States v. Jackson*, 22 F. App'x 396 (6th Cir. 2001) (per curiam). In *Jackson*, the defendant had appeared before a magistrate judge, but was arraigned and entered a not guilty plea one week later. This court held that, pursuant to § 3161(c)(1), the STA clock began to run when he made his first appearance, not when he entered his not guilty plea. *Jackson*, 22 F. App'x at 397-98.

Defendant's reading of both *Lopez-Valenzuela* and *Jackson* glosses over a critical factual difference between those cases and this one. In both of those cases, the defendants never attempted to reverse course late in the game. *See Lopez- Valenzuela*, 511 F.3d at 488 (defendant signed a "Waiver of Appearance and Entry of Not Guilty Plea" form on the date of his indictment); *Jackson*, 22 F. App'x at 398 n.3 (defendant's guilty plea was entered approximately one week after his first appearance). By contrast, shortly after indictment, Defendant evinced an intent to plead guilty and waive trial, signing a form to that effect in May 2007. R. 4. He did not change his mind until nearly five years later. And it is precisely this change of heart—in a collateral attack long after he had pleaded guilty and been sentenced on the Kentucky charges— that distinguishes this case from *Lopez-Valenzuela* and *Jackson* and makes § 3161(c)(1) inapplicable. *Cf. United States v. Robertson*, 260 F.3d 500, 503 (6th Cir. 2000) (holding that the STA began running on the date the defendant expressed his desire to withdraw his guilty plea and proceed to trial; applying § 3161(i) and not § 3161(c)(1)).

Despite some confusing language conflating the applicability of the STA with the commencement of the running of the STA clock, *see O'Dell* 154 F.3d at 360 ("The plain meaning of the language of the STA requires a not guilty plea to begin the clock running."), as the Fifth Circuit noted, *O'Dell's* "actual holding was that the clock never began to run because the defendant at no time entered a not guilty plea," *Lopez-Valenzuela*, 511 F.3d at 490. *Jackson* also supports the district court's holding. The *Jackson* court rejected the government's reliance on *O'Dell* in arguing that the date of the entry of the not guilty plea was the trigger for the STA clock, noting that in *O'Dell* the defendant had never entered a not guilty plea, whereas the

*Jackson* defendant had, "eventually." *Jackson*, 22 F. App'x at 398. n.3; *see also United States v. Tinklenberg*, 579 F.3d 589, 594 (6th Cir. 2009), *aff'd on other grounds*, 563 U.S. 647 (2011) ("Thus, *O'Dell* stands only for the proposition that the Speedy Trial Act does not apply to a case in which the defendant never pleads not guilty. Although this Court opined that the Speedy Trial Act 'requires a not guilty pleas to begin the clock running,' that statement was irrelevant to the outcome of the case and was therefore dicta.").

The right to be protected is the right to a speedy trial. That right is not implicated until the defendant pleads not guilty, or at least clearly indicates the desire to plead not guilty. The statutory scheme, §§ 3161(c)(1), (e), and (i), reflect this understanding.

As the district court recognized, *Bond* is much like this case. In *Bond*, the defendant was indicted on two counts of armed robbery and properly pleaded guilty to one count after the other was dismissed. He later successfully withdrew the guilty plea. Then, in order to avoid related state charges, he entered a guilty plea to original federal charges. Later, he moved successfully pursuant to § 2255 to vacate his sentence because the district court had failed to re-establish the factual bases for the guilty pleas. *Bond*, 956 F.2d at 629. The defendant then entered pleas of not guilty to both counts of the indictment. *Id*. The defendant filed a motion to dismiss, claiming that the trial date was outside the seventy-day limitation of the STA. *Id*. This required the *Bond* court to choose an appropriate trigger date under the STA. As *Bond* observed,

> [i]n such cases, a defendant has never gone through trial, hence section 3161(e)'s protection of a defendant's rights on retrial do not apply because a defendant who has never been tried cannot later be *retried*. Likewise, read strictly, section 3161(i) applies only to situations where the defendant withdraws a guilty plea, and not where, as here, the trial court vacates his prior plea agreement.

*Id.* at 630-31.

*Bond* concluded that § 3161(e), not (i), applies to cases in which a guilty plea is collaterally attacked and vacated, even though the defendant was never "tried" a first time. *Bond*, 956 F.3d at 631. *Bond* adopted the reasoning of the First Circuit in *United States v. Mack*, 669 F.2d 28 (1st Cir. 1982):

> In *Mack*, the court relied on the legislative history in concluding that section 3161(e) and not 3161(i) applies to cases where a defendant's guilty plea

> agreement is vacated. The court noted that Congress intended for section 3161(i) to prevent a defendant from entering a "plea of guilty on the 59th day to one of several charges and wait several weeks, and then withdraw his plea before sentencing, thereby frustrating any prosecution on the other counts which might not yet have been dismissed." *Mack*, 669 F.2d at 31-32 (quoting 120 CONG.REC. 41623 (1974)). Since this problem is not presented in cases where the court vacates a guilty plea, the *Mack* court concluded that section 3161(i) did not apply to cases of this type. Instead, the court reasoned that section 3161(e) is more appropriately applied to situations where a defendant's guilty plea is later vacated by a district court on habeas review. The court did "not think that the words 'tried again' in § 3161(e) was intended to exclude from its coverage cases involving a successful collateral attack upon a guilty plea conviction rather than after trial." *Mack*, 669 F.2d at 32. The reasoning of *Mack* appears to be in accord with the policy behind the Speedy Trial Act and therefore we believe it should be followed by this circuit.

*Bond*, 956 F.2d at 631. Under Defendant's reading, namely that § 3161(c) applies any time a guilty plea is successfully vacated on a collateral attack and the defendant subsequently enters a not guilty plea, there will be a speedy trial act violation, which would be at odds with the purposes of the STA. *Bond* and *Mack* realized this and interpreted § 3161(e) accordingly.

This case is *Bond* with a twist: on "the date the action occasioning retrial bec[ame] final"—the date the trial court vacated Defendant's guilty plea (September 30, 2015)—the Ohio court lost jurisdiction pursuant to Rule 20. Thus, as the district court decided, this is not unlike the situation after a court of appeals vacates a guilty plea and the matter is returned to the district court for further proceedings. The circuits are split as to when to begin counting the limitations period under § 3161(e). Three circuits have held that the clock restarts on the day the mandate issues, *see United States v. Crooks*, 826 F.2d 4, 5 (9th Cir. 1987); *United States v. Felton*, 811 F.2d 190, 198 (3d Cir. 1987); *United States v. Robertson*, 810 F.2d 254, 259 (D.C. Cir. 1987). Two other circuits have held that the STA clock starts on the day the mandate is received and filed by the district court. *United States v. Long*, 900 F.2d 1270, 1276 (8th Cir. 1990); *United States v. Lasteed*, 832 F.2d 1240, 1243 (11th Cir. 1987). In an unpublished per curiam, this court adopted the latter view. *See United States v. Alexander*, 983 F.2d 1068, 1992 WL 361371 (6th Cir. 1992) (per curiam); *see generally Bond*, 956 F.2d at 631-32 (discussing split; using analogy to determine when STA clock begins running following the district court's

vacation of a guilty plea). That is, the STA clock begins running when the district court regains jurisdiction.

We agree with the district court that a similar rule should apply where, by operation of Fed. R. Crim. P. 20(c), the Ohio court lost jurisdiction once Defendant's plea was vacated and the case was restored to the Eastern District Court of Kentucky docket. Thus, jurisdiction was restored to the Eastern District of Kentucky on December 23, 2015, when the Rule 20 paperwork was returned.[5] And as the district court observed, although the scheduled trial date was outside the seventy-day limitations period, Defendant does not claim on appeal that STA was not violated due to excludable delays.

## B. Sixth Amendment Claim

Defendant also argues that the district court misapplied the *Barker v. Wingo*[6] factors in determining that his Sixth Amendment right to a speedy trial was not violated and therefore erroneously refused to dismiss the Kentucky indictment.[7] The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530-32. No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id*. at 533; *see also id.* at 522 (stating

---

[5]Even if § 3161(c) applied, Defendant would still not prevail. Section § 3161(c) specifies that the speedy trial clock is triggered by the latter of the indictment or the defendant's appearance "before a judicial officer of the court in which such a charge is pending." 18 U.S.C. § 3161(c). Although this court has not decided what "court" means in that section, three other circuits have held that it refers to the specific charging district. *See United States v. Montoya*, 827 F.2d 143, 152 (7th Cir. 1987); *United States v. Wilson*, 720 F.2d 608, 609 & n.4 (9th Cir. 1983); *United States v. Atkins*, 698 F.2d 711, 714 (5th Cir. 1983). Defendant was indicted in the Eastern District of Kentucky in 2005 but did not appear in that court until January 20, 2016. This would be the trigger date under § 3161(c).

[6]407 U.S. 514 (1972).

[7]The STA protects against delay from the time of indictment or appearance. The Sixth Amendment protects against delay from the time of arrest when it occurs before indictment or appearance. *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007).

that the speedy-trial right is "amorphous," "slippery," and "necessarily relative"); *Cain v. Smith*, 686 F.2d 374, 381 (6th Cir. 1982) ("The speedy trial right has an amorphous quality which requires courts to 'approach speedy trial cases on an ad hoc basis.'") (quoting *Barker*, 407 U.S. 530).

### 1.      Length of Delay

"The first factor, length of the delay, is a triggering mechanism." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007).  A one-year delay is presumptively prejudicial and triggers analysis of the remaining *Barker* factors.  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).  Noting that as of April 27, 2016, ten years, four months, and fourteen days had passed since Defendant was indicted, the district court found the length of the delay, "far exceeded the ordinary threshold" and was presumptively prejudicial.  ID# 940.  This factor is not in dispute.

### 2.      Reason for Delay

"In assessing the second factor, the reason for the delay, the court considers who is most at fault—the government or the defendant." *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017) (citing *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003)), *petition for cert. filed,* May 16, 2017 (No. 16-1373).  "Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government."  *Id.* (quoting *Schreane*, 331 F.3d at 553).  Negligence and unexplained delays weigh less heavily against the government, but remain relevant, "since the ultimate responsibility for such circumstances belongs to the government rather than with the defendant."  *Id*. (quoting *Schreane*, 331 F.3d at 554 (quoting *Barker*, 407 U.S. at 531)).  The government bears the burden of explaining the cause of the delay.  *Id*. (citations omitted).

The district court held that the second *Barker* factor, the reason for the delay, was "neutral."  The court observed that the delay was attributable to the defective plea and sentencing process in the Ohio case.  ID# 941.  Notwithstanding, the court did not find this breakdown to merit relief because it "likely constitute[d] negligence" and "none of the parties complained or even mentioned the lack of a guilty plea to the sentencing court."  ID# 941.  Moreover, "the primary reason" Defendant did not receive a speedy trial was because he had opted to plead

guilty and to enter into a unified plea agreement covering both the Ohio and Kentucky charges. ID# 941-42. On top of that, Defendant failed to raise the issue on direct appeal, and waited almost five-years to bring the § 2255 motion. ID# 942. Thus, although "disconcerted by the lapse of over ten years and the breakdown of the plea and sentencing process in Defendant's case," the district court refused to hold that the government and the district court were "more to blame for the delay" than Defendant. *Id.*

Defendant argues that negligence is an unacceptable reason "for delaying a criminal prosecution once it has begun," Appellant's Br. at 28 (quoting *Doggett*, 505 U.S. 647, 657 (1992)), and that "delay resulting from a systemic breakdown" must be attributed to the government and the trial court, *id*. at 27 (quoting *Vermont v. Brillon*, 556 U.S. 81, 94 (2009)). Defendant claims that the district court found that the Ohio court was mostly to blame, citing the court's comment at oral argument in a pretrial conference held on April 12, 2016, after the motion to dismiss was filed but before it was decided:

> I can say without hesitation that I don't think this would have happened here because our probation officers sit in the courtroom during the rearraignments. I understand from the probation officers that that's not the case in the Southern District.

ID# 1104-05; *but see* ID# 1106 ("I started out my discussion here this morning with there's negligence to go around on every level. The Court, Probation, defense counsel, prosecutor, all court entities because no one caught it.") Thus, according to Defendant, because the government and the court were negligent, this factor should have weighed against the government.

Defendant seems to be arguing that if there is *any* negligence on the government's part, then the government is *entirely* to blame for the delay. But the second *Barker* factor directs the court to ask "whether the government or the criminal defendant is *more* to blame for [the] delay," *Doggett*, 505 U.S. at 651 (emphasis added). In other words, the second *Barker* factor asks the court to weigh the equities in each case. Here, the district court found that there was "negligence . . . to go around for everybody." ID# 1104. This included Defendant, who decided to plead guilty and not go to trial, and behaved accordingly until he filed his § 2255 motion five years later. ID# 941-42. Contrary to Defendant's assertion, the district court did not suggest that the government was *more* culpable. Indeed, in its written opinion, the court clearly stated that it

"[could] not say that the Government and the district court are more to blame for the delay than the Defendant." ID# 942. Nothing in the record undermines that conclusion. Defendant's intention to plead guilty may explain why he did not object at sentencing to the Kentucky charges, but it does not excuse his negligence in failing to point out the missing factual basis for the plea. In short, the court did not err in holding that this factor could not be counted against the government or in Defendant's favor.

The cases Defendant cites do not bolster his assertion. In *Cain v. Smith*, 686 F.2d 374 (6th Cir. 1982), the state obtained five continuances over the defendant's speedy trial objections, but the record did not contain the district court's rationale for granting the continuances. This Court therefore remanded for fact finding because it was unable to engage in the delicate balancing required to assess whether the lengthy delay constitutes a constitutional violation. *Id.* at 376, 385. In *Brillon*, the Supreme Court held that the Vermont Supreme Court made a "fundamental error" in attributing to the State all delays, without adequately taking into account the role of defendants and their counsel. *Brillon*, 556 U.S. at 91-92 (holding that delay caused by defense counsel was attributable to the defendant). *See also United States v. Williams*, 753 F.3d 626, 632-33 (6th Cir. 2014) (stating "a court should consider whether some of the delay is attributable to the defendant"); *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (defendant offered "nothing to suggest that the government was *more* to blame for the initial delay in apprehending him than he himself, or that it acted in bad faith or was negligent in failing to locate him"); *Wilson v. Mitchell*, 250 F.3d 388, 395 (6th Cir. 2001) (although blame for 22–year delay could have been placed on both defendant and state, defendant "was more to blame for that delay" because he actively evaded arrest whereas state was passively negligent in pursuing him).

That is precisely what the court did in this case: it weighed the relative faults of all parties involved and concluded that everyone had a hand in this mess. Under these circumstances, this factor was properly deemed neutral.

######     3.        Timely Assertion

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 531. The district court found that the third *Barker* factor was neutral, noting that Defendant did not assert his speedy trial right until after his conviction and sentence were vacated on collateral attack. In the district court's view, "[t]he fact that Defendant would have pled guilty, but for the defect in the plea and sentencing on the Kentucky charges, coupled with the lengthy amount of time that lapsed before Defendant asserted his right to a speedy trial," cast sufficient doubt on the sincerity of his demand. ID# 942-43.

Defendant argues that this factor favored him because he asserted the right within two months after the case was returned to the Eastern District of Kentucky and only eight days after his arraignment.[8] But as the United States points out, case law supports the district court's determination. In *United States v. Flowers*, 476 F. App'x 55 (6th Cir. 2012), this Court held that the defendant's belated assertion of speedy trial rights "cast[s] doubt on the sincerity of the demand" and weighed in favor of the government. *Id.* at 63 (defendant did not vigorously assert his speedy trial rights since his request was made at least twelve months and arguably seventeen months after he was indicted) (citation omitted). In *United States v. Brown*, 498 F.3d 523 (6th Cir. 2007), this Court held that the defendant's failure to assert his speedy trial right until his appeal "weigh[ed] heavily toward a conclusion that no Sixth Amendment violation occurred." *Id.* at 532. And in *Barker*, the landmark case concerning the constitutional right to a speedy trial, the Supreme Court held that the five-year delay between arrest and trial did not create a constitutional violation in large part because the defendant "did not want a speedy trial," as reflected by the fact that he did not file a motion to dismiss for almost four years after his

---

[8]Commendably, the government pointed out in a Rule 28(j) letter that Defendant first asserted his right to a speedy trial on October 6, 2013, in a supplemental memorandum in support of his § 2255 motion to vacate in the United States District Court for the Southern District of Ohio. The Southern District of Ohio court did not address it because it did not have jurisdiction under Fed. R. Crim. P. 20. Although Defendant actually asserted his speedy trial right two and a half years earlier than both parties and the district court believed, the analysis remains the same. First, the Southern District of Ohio lacked jurisdiction to address the claim. Second, the speedy trial assertion was still years after he was arrested, and more than six years after his attempt to plead guilty, which supports the conclusion that the Defendant did not really want a speedy trial.

indictment.  *Baker,* 407 U.S. at 534.  The same is true here.  The court correctly counted this factor a neutral.

### 4.     Prejudice

The last factor, prejudice, should be assessed "in the light of" three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern due to unresolved criminal charges, and (3) to minimize damage to the defense.  *Barker*, 407 U.S. at 532.  After analyzing these interests, the district court correctly concluded that Defendant was not prejudiced despite the delay.  First, Defendant would have been in federal custody on the Ohio charges in any event.  *Cf. Brown*, 498 F.3d at 532 (no prejudice occurred because defendant was in state custody on other charges).  Second, because Defendant had intended to plead guilty to the Kentucky charges in 2007 and would have successfully pled but for the slip-up, any anxiety on his part was minimal.  *Cf. Barker*, 407 U.S. at 533-34 (defendant waited more than five years from arrest to trial evading prosecution during that time).  Third, Defendant failed to show that his defense was impaired by the delay.  At oral argument, the government pointed out that Defendant's codefendant proceeded to trial in 2007 on the exact same charges in this matter, and that Defendant was provided with the testimony of all of those witnesses.

Defendant basically contends that he is entitled to a presumption of prejudice because of the long delay between his indictment in December 2005 and his § 2255 motion.  *See Doggett*, 505 U. S. at 657 (lengthy delay due to government's negligence can give rise to a presumption of prejudice).  This Court has rejected any such "bright-line rule."  *United States v. Watford*, 468 F.3d 891, 908 (6th Cir. 2006) (citing *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000)).  Even if the five-year delay here was presumptively prejudicial, the Supreme Court has stated that "'presumptive prejudice cannot alone carry a Sixth Amendment claim,' but rather must be considered in the context of the other factors, particularly the reason for the delay." *United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006) (quoting *Doggett*, 505 U.S. at 656).  As discussed above, everyone was responsible for the lengthy delay, such that no one party should shoulder the blame.  Equally important, Defendant did not want a trial in this case.  In fact, after the motion at issue was denied by the district court, Defendant entered a conditional

guilty plea. In short, the district court did not err in holding that the fourth factor did not help Defendant.

The Supreme Court has clearly indicated that the speedy trial analysis is "necessarily relative. It is consistent with delays and depends upon circumstances." *Barker*, 407 U.S. at 522. Even if all four *Barker* factors are satisfied, a court is not required to conclude that a defendant's speedy trial right has been violated. *See id*. at 533. The unique facts of this case demonstrate why such flexibility is necessary. Although the Ohio court and the government were also at fault, their collective behavior was at least consistent with Defendant's original intention to plead guilty. On balance, it cannot be said that Defendant's Sixth Amendment right to a speedy trial was violated.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.