**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 1, 2022**

Christopher M. Wolpert

_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DARRELL E. BLACK,

      Defendant - Appellant.

No. 20-3199

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 6:17-CR-10123-EFM-1)**

_____

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, with him on the brief), Kansas Federal Public Defender, Kansas City, Kansas, for Defendant-Appellant.

Sangita K. Rao, U.S. Department of Justice, Criminal Division, Appellate Section, Washington, D.C. (Duston Slinkard, Acting United States Attorney, District of Kansas; James Brown, Assistant United States Attorney; Lanny Welch, Assistant United States Attorney; Nicholas L. McQuaid, Acting Assistant Attorney General; and Robert A. Zink, Acting Deputy Assistant Attorney General, with her on the briefs), for Plaintiff-Appellee.

_____

Before **BACHARACH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves the Speedy Trial Act. Under the Act, a trial must ordinarily start within 70 days of the defendant's appearance before a judge in the district where the indictment is pending. Typically, the defendant's first appearance occurs in the district where the indictment was filed, triggering the 70-day period. But what if the case is transferred to another district just for entry of a plea and the defendant first appears in front of a judge in the transferee district? Is the indictment pending in that district?

The district court answered *no*, concluding that the defendant's appearance in the transferee district did not start the speedy-trial clock. We disagree. The indictment was pending in the transferee district; otherwise that court couldn't have accepted a plea. So the defendant's first appearance in the transferee district triggered the 70-day period for trial.

## I.    Mr. Black is arrested in Missouri and charged with federal offenses in Missouri and Kansas.

Mr. Black was a suspect in three robberies; two took place in Kansas, and one in Missouri. He was arrested in Missouri and indicted for robbery in both the Western District of Missouri and the District of Kansas.[1]

---

[1]    The Kansas charges consisted of two counts of Hobbs Act robbery, 18 U.S.C. § 1951, two counts of brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1), and two counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).

While in custody in Missouri, Mr. Black expressed a wish to plead guilty and asked the District of Kansas to transfer the charges to the Western District of Missouri under Federal Rule of Criminal Procedure 20. The District of Kansas granted Mr. Black's request and transferred the indictment to the Western District of Missouri. With the transfer, the District of Kansas marked the case and pending Kansas charges as "terminated" on the docket sheet. The Western District of Missouri opened a criminal docket with a new case number for the Kansas charges.

## II.    Mr. Black pleads not guilty and the case returns to Kansas.

On April 30, 2018, Mr. Black had his arraignment in the Western District of Missouri. At the arraignment, he pleaded not guilty to the Kansas charges. The court scheduled a later hearing, expecting Mr. Black to change his plea to "guilty." But he didn't. Min. Entry for Change of Plea Hr'g, *United States v. Black*, No. 2:17-cr-04044-BCW-1 (W.D. Mo. Oct. 17, 2018), ECF No. 34.[2]

Mr. Black's plea of not guilty triggered Federal Rule of Criminal Procedure 20(c), which required

- the clerk of the transferee court to "return the papers to the court where the prosecution began" and

---

[2]    Both parties refer to entries on the docket for the Missouri charges, W.D. Mo. Case No. 2:17-cr-04044-BCW. *E.g.*, Appellant's Opening Br. at 7; Appellee's Resp. Br. at 6. Mr. Black moved to supplement the record with this docket. Rather than order supplementation of the record, we take judicial notice of the contents of the docket in the Western District of Missouri. *See Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020).

- the original court to "restore the proceeding to its docket."

Fed. R. Crim. P. 20(c). So once Mr. Black decided to plead not guilty, the Western District of Missouri had to return the case to the District of Kansas for Mr. Black to stand trial. The Western District of Missouri thus

- granted the government's motion to return the case to the District of Kansas and

- directed the clerk "to immediately take all necessary steps to return this matter to the District of Kansas."

Supp. R. vol. 1, at 15–16.

On November 15, 2018, the Clerk for the Western District of Missouri notified the Clerk for the District of Kansas, stating that the case was "being transferred back to your court for disposition" and transmitting the docket sheet and court papers to the District of Kansas. Supp. R. vol. 1, at 17. With return of the case to Kansas, the Western District of Missouri marked its own case as terminated. But Mr. Black remained in custody in Missouri for sentencing on the Missouri charges.

### III.   After the case was transferred back to the District of Kansas, Mr. Black remains in Missouri until March 22, 2019.

On December 18, 2018, the Western District of Missouri accepted Mr. Black's guilty plea on the Missouri charges. But the court waited 50 days to schedule the case for sentencing. The sentencing itself didn't take place until March 6, 2019. Sixteen days later, Mr. Black appeared in the District of Kansas.

**IV.    The District of Kansas denies Mr. Black's motion to dismiss the indictment.**

Mr. Black invoked the Speedy Trial Act, moving to dismiss the indictment on the Kansas robberies. The District of Kansas denied the motion.

Mr. Black and the government reached a conditional plea agreement. Under the agreement, Mr. Black pleaded guilty to the two Kansas charges but preserved his objection under the Speedy Trial Act. The District of Kansas entered a judgment of conviction, and Mr. Black appealed.

**V.    Our review is de novo.**

We conduct de novo review of an alleged violation of the Speedy Trial Act. *United States v. Allen*, 603 F.3d 1202, 1208 (10th Cir. 2010). But we will overturn an underlying factual finding only it was clearly erroneous. *Id.*

**VI.    The speedy-trial clock starts when Mr. Black appears in the Western District of Missouri.**

Because Mr. Black had pleaded not guilty to the two Kansas charges, the Speedy Trial Act required the trial to start within 70 days of his appearance before a judge of "the court where the charge[s] w[ere] pending." 18 U.S.C. § 3161(c). The parties disagree on whether that court was the District of Kansas or the Western District of Missouri. If the charges were pending in the Western District of Missouri, the speedy-trial clock would have begun on April 30, 2018. If the charges were pending in

the District of Kansas, the speedy-trial clock would have begun roughly eleven months later (when Mr. Black appeared in the District of Kansas).

**A.    When Mr. Black was arraigned in the Western District of Missouri, the charges for the Kansas robberies were pending in the Western District of Missouri.**

We must start with the text of the Speedy Trial Act and Federal Rule of Criminal Procedure 20. *See Duncan v. Walker*, 533 U.S. 167 (2001). Under the Act, the speedy-trial clock starts when the defendant appears in the court where the charges are "pending." 18 U.S.C. § 3161(c). The parties do not dispute pendency of the indictment in the District of Kansas before the transfer; the question is whether the transfer rendered the indictment pending in the Western District of Missouri.

To answer this question, we start with the definition of "pending." The parties agree that "pending" means "[r]emaining undecided; awaiting decision." *Pending*, Black's Law Dictionary (11th ed. 2019). So we must decide whether the transfer rendered the charges "undecided" or "awaiting decision" in the Western District of Missouri.

The transfer was governed by Federal Rule of Criminal Procedure 20:

A prosecution may be transferred from the district where the indictment or information is pending . . . to the district where the defendant is arrested, held, or present if:

(1)    the defendant states in writing a wish to plead guilty or nolo contendere and to waive trial in the district where the indictment, information, or complaint is pending, *consents in writing to the court's disposing*

6

> > *of the case in the transferee district*, and files the statement in the transferee district; and
>
> (2)    the United States attorneys in both districts approve the transfer in writing.

Fed. R. Crim. P. 20(a) (emphasis added). Under this rule, the prosecution could be transferred only if Mr. Black consented to "disposi[tion] of the case" in the transferee district (the Western District of Missouri). Fed. R. Crim. P. 20(a). So the rule contemplated that upon transfer, the Western District of Missouri would obtain power to dispose of the case.

To "transfer" is "[t]o convey or remove from one place or one person to another; to pass or hand over from one to another, *esp. to change over the possession or control of*." *Transfer*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). So the transfer shifted "the possession or control of" the case from the District of Kansas to the Western District of Missouri. Given that shift, the case was undecided and awaiting decision— and thus pending—in the Western District of Missouri when Mr. Black was arraigned there.

The government conceded at oral argument that the Kansas charges were pending in the Western District of Missouri for purposes of entering a plea and sentencing (if Mr. Black pleaded guilty). But the government insists that the transfer did not render the proceedings "pending" in the Western District of Missouri for speedy-trial purposes, arguing that

7

- the transfer was partial because the charges remained pending in the District of Kansas and

- the District of Kansas was the only court that could try the case.

In our view, the charges were no longer pending in the District of Kansas when Mr. Black's case was transferred to the Western District of Missouri. The transfer was complete, preventing the District of Kansas from acting while the case was pending in the Western District of Missouri.[3]

### 1.    Transfer of the prosecution to the Western District of Missouri was complete.

The government contends that transfer of a prosecution can sometimes be partial, giving the example that people can transfer weight from one foot to another without transferring all of their weight. Appellee's Resp. Br. at 33. This example disregards Rule 20(a)'s reference to transfer of "a prosecution." Rule 20(a) uses the singular, indefinite article *a*. The indefinite article *a* "limit[s] . . . or make[s] . . . more or less definite" the corresponding noun. Bryan A. Garner, *Garner's Modern English Usage* 991 (4th ed. 2016). In other words, the article *a* specifies a

---

[3]    In civil cases, transfer similarly divests the original court of "all jurisdiction over the case." *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516–17 (10th Cir. 1991). "[T]he action retains its procedural identity" in the transferee court and the transferor court loses authority to act. *Id.* at 1516 (citing *Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir. 1988)).

particular item and rules out a partial transfer of that item. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) (observing that the indefinite article *a* before the noun "notice" indicates that the "notice" must "come all at once" rather than in installments); *see also Banuelos v. Barr*, 953 F.3d 1176, 1181 (10th Cir. 2020) ("[I]n most contexts, the singular article 'a' refers to only one item."). Rule 20(a) thus treats a prosecution as something that can occur only in one district.

The singular nature of "a prosecution" is also reflected elsewhere in Rule 20. For example, Rule 20(c) provides that if the defendant pleads not guilty in the transferee district, the original district must "restore the proceeding to the docket" and the transferee district must "return the papers to the court where the prosecution began." Fed. R. Crim. P. 20(c). If the case had remained pending in the District of Kansas, it wouldn't have needed return of the court papers or restoration to the docket.

The government downplays the importance of returning "the papers" by distinguishing "the papers" from authority over the case. Appellee's Resp. Br. at 33–34. Under Rule 20, however, the papers remain in the court with authority to act.

Rule 20 was adopted in 1944, over a half-century before the start of electronic filing. So any federal court needed the paper file in order to proceed. Given this need, the original version of Rule 20 required the clerk of the original district to "transmit the papers in the proceeding" to the

9

transferee district so that the proceeding would "continue in that district." 18 U.S.C., Fed. R. Crim. P. 20 (1946). Similarly, if a case were transferred for trial, the clerk of the original district had to "transfer[] all papers in the proceeding" to the transferee district for "the prosecution [to] continue in that district." 18 U.S.C., Fed. R. Crim. P. 21(c) (1946). Given the importance of the paper file, this transfer of "the papers" traditionally conveyed authority over the case. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516–17 (10th Cir. 1997) (civil cases); *In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992) (per curiam) (criminal cases).

These rules remain largely intact after the emergence of electronic filing. When Mr. Black was arrested, Rule 20 authorized transfer of his prosecution to the Western District of Missouri. With that transfer, the clerk in the District of Kansas had to "send the file" or a certified copy to the clerk of the Western District of Missouri. Fed. R. Crim. P. 20(b). With these papers, the Western District of Missouri obtained the authority to act.

2.   **The transfer to the Western District of Missouri stripped the District of Kansas of authority to act in Mr. Black's case.**

The government also argues that the case must have remained pending in the District of Kansas because that was the only court that could conduct a trial. But this argument overlooks

10

- the defendant's right to waive venue and consent to trial in the Western District of Missouri,

- the Western District of Missouri's authority to accept the defendant's guilty plea, and

- the procedures governing transfers in civil cases.

Venue for the Kansas charges would ordinarily exist only in the District of Kansas because the crimes took place there. *See* U.S. Const. art. III § 2, cl. 3; U.S. Const. amend. VI. But Mr. Black could waive venue and consent to trial in the Western District of Missouri. *See Lightfoot v. United States*, 327 F.2d 207, 208 (10th Cir. 1964) (per curiam) ("We have held that the right of an accused to be tried in a particular district is a personal privilege which may be waived.") (citations omitted); *Hildebrand v. United States*, 304 F.2d 716, 717 (10th Cir. 1962) (per curiam) ("[T]he constitutional provision respecting place of criminal trials is a personal privilege which may be waived.") (citations omitted).

Even if we ignore the defendant's right to consent to trial in the transferee district, the Speedy Trial Act refers to the district where the charge is *pending* (18 U.S.C. § 3161(c)(1))—not the district where the trial would take place. If the charges weren't pending in the Western District of Missouri, that court couldn't have accepted a guilty plea. And both parties agree that the Western District of Missouri could accept the guilty plea. So the charges were pending in the Western District of Missouri.

11

The government's argument also overlooks how district courts ordinarily treat cases transferred between districts. A common example involves multidistrict litigation. The statute governing multidistrict litigation, 28 U.S.C. § 1407, allows the transfer of multiple civil cases to a single district for pretrial proceedings. This transfer takes place only for the transferee court to conduct pretrial proceedings. If the case must go to trial, the transferee court will remand the case to the original court. *See* 28 U.S.C. § 1407(a).

Even though the transfer is for a limited purpose, the original court loses authority to act when the case is docketed in the transferee district. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004) (stating that once the transferee district receives the transfer, "the jurisdiction of the [original] court[4] ceases and the transferee court has exclusive jurisdiction").

The same is true here. Upon transferring the prosecution, the District of Kansas lost authority to act and the Western District of Missouri gained that authority. *See United States v. Khan*, 822 F.2d 451, 455 (4th Cir. 1987) (concluding that with a transfer under Rule 20, "[s]ubject matter jurisdiction is, thereby, shifted from the charging district to the transferee

---

[4]    Until recently, many authorities used the term "jurisdiction" loosely when referring to a court's authority to act. *Peretz v. United States*, 501 U.S. 923, 953 (1991) (Scalia, J., dissenting).

12

district for the narrow purpose envisioned in the rule") (citation omitted). That authority was limited, allowing the Western District of Missouri only to accept a plea. But like transfers in multidistrict litigation, the original court lost the power to act while pretrial proceedings took place in the transferee district. So too the original court lost authority to act once the transferee court docketed the papers.

Both courts recognized the change: The District of Kansas terminated the case on its docket, and the Western District of Missouri opened a docket for the case. And once the Western District of Missouri returned the papers to the District of Kansas, the District of Kansas restored the proceedings to its docket and regained authority over the case. Only then did the action resume in the District of Kansas.[5]

**B.    The government's out-of-circuit authority is not persuasive.**

To support its interpretation of the speedy-trial clock in the context of Rule 20, the government relies on three out-of-circuit opinions. But these opinions do not directly address our situation and contain only cursory discussion of the Speedy Trial Act. We find them unpersuasive.

---

[5]    The dissent downplays the Western District of Missouri's opening of a new docket, characterizing the opening of a new case as an administrative convenience. But then why did the District of Kansas mark its docket as terminated while the case was pending in Missouri? At each point, only one district court had a docket open for the Kansas charges; and each court closed its docket once it lost authority over Mr. Black's case.

13

*See United States v. Kreuger*, 809 F.3d 1109, 1116 n.9 (10th Cir. 2015) (declining to follow unpersuasive out-of-circuit opinions).

The first case, *United States v. Young*, 814 F.2d 392 (7th Cir. 1987), addresses the Speedy Trial Act only in a short statement that constituted either an unreasoned alternative holding or dictum. 814 F.2d at 395. In *Young*, the defendant was arrested in Michigan on federal charges originating in Indiana. *Id.* at 393. He agreed to transfer the case to Michigan for entry of a guilty plea, but he did not plead guilty. *Id.* at 394. Though he declined to plead guilty, he stipulated to exclude the time preceding the transfer to Indiana. *Id.* He then challenged the validity of that stipulation and moved to dismiss the indictment. *Id.* The Seventh Circuit's primary holding was that the stipulation was valid and enforceable. *Id.* at 395.

The government points to the Seventh Circuit's statement that the charge hadn't been pending in the district court in Michigan for speedy-trial purposes because the court "had authority pursuant to Rule 20 only to act upon the defendant's guilty plea, or return him to Indiana." Appellee's Resp. Br. at 26 (quoting *Young*, 814 F.3d at 395). The government relies on this language even though the court was addressing an argument that Mr. Black has not made.

There the transferee court had mistakenly set the case for trial before returning the case to the original court. *Young*, 814 F.2d at 395. According

14

to the defendant, the transferee court's setting of the case for trial rendered the charges pending there. *Id.* But the defendant did not argue that a transferee court is ordinarily where the charges are pending for purposes of the Speedy Trial Act. *Young* thus provides little help for us.

The second opinion, *United States v. Wickham*, 30 F.3d 1252 (9th Cir. 1994), also contains only a cursory analysis. In *Wickham*, the defendant was arrested in Texas on federal charges in California. 30 F.3d at 1253. He invoked Rule 20 to obtain transfer of the case to Texas federal court, where he pleaded guilty and then withdrew the plea. *Id.* The primary issue in *Wickham* was whether the speedy-trial clock had started to run when the court allowed the defendant to withdraw his plea. *Id.* at 1254. But our case doesn't involve withdrawal of a guilty plea. So *Wickham* too provides little help on our issue.

The third opinion, *United States v. Sutton*, 862 F.3d 547 (6th Cir. 2017), provides even less guidance. The court there applied a different subsection of the Speedy Trial Act, § 3161(e), which governs when a conviction is vacated through an appeal or collateral review. 862 F.3d at 554. In *Sutton*, the defendant was arrested in Ohio and faced federal charges in both Kentucky and Ohio. *Id.* at 551. He agreed to plead guilty in the Southern District of Ohio on all charges, so the Kentucky charges were transferred to the Southern District of Ohio. *Id.* After the Kentucky charges

15

were transferred, he agreed to a statement of facts that covered these charges. *Id.* But he did not enter a plea on the Kentucky charges. *Id.*

The defendant, the court, and the government did not catch this error; and the Ohio court sentenced the defendant on both the Kentucky and Ohio charges. *Id.* at 552. Five years later, the defendant noticed the error and collaterally challenged the sentence on the Kentucky charges. *Id.* The Southern District of Ohio credited the challenge and vacated the sentence. *Id.*

The defendant then sought dismissal of the Kentucky charges under § 3161(c)(1), reasoning that more than 70 days had elapsed from his first appearance in the district court in Ohio. *Id.* But the Sixth Circuit rejected this argument and applied § 3161(e), a separate provision governing cases when a conviction is vacated on collateral review. *Id.* at 558.

Although the Sixth Circuit based its analysis on § 3161(e), the government asks us to follow a statement made in a footnote. There the court said that if § 3161(c)(1) had applied, the court where "such a charge [was] pending" would have been the charging court. *Id.* at 558 n.5. But that footnote contained no analysis of the issue. Instead, the court noted that

- the Sixth Circuit "ha[d] not decided what 'court' means in [§ 3161(c)(1)]" and

- three other circuits had held that the term "refer[red] to the specific charging district."

16

*Id.* Those three circuit court opinions hadn't involved a Rule 20 transfer. *See United States v. Montoya*, 827 F.2d 143 (7th Cir. 1987); *United States v. Wilson*, 720 F.2d 608 (9th Cir. 1983); *United States v. Atkins*, 698 F.2d 711 (5th Cir. 1983). *Sutton* thus provides little guidance here.

### C.    The government's policy arguments don't affect our interpretation of the Speedy Trial Act.

The government argues that

- Mr. Black's interpretation of the Speedy Trial Act would discourage governmental consent to transfers under Rule 20, which would lead to more consecutive sentences,

- Mr. Black could still challenge the delay based on the Constitution rather than the Speedy Trial Act, and

- dismissal of the indictment would impede the efficient use of resources.

Appellee's Resp. Br. at 37–38, 41. But we are not policymakers; these are issues better left to Congress.

* * *

When Mr. Black was arraigned, the Western District of Missouri was the only court where the Kansas charges were pending. And that arraignment constituted an "appearance." *See Appearance*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A coming into court as a party or interested person . . . .").[6] So it was April 30, 2018 when Mr. Black first "appeared"

---

[6]    The government argues that Mr. Black's arraignment in the Western District of Missouri was not an appearance because

17

before a judge in the district where the charges were pending. The speedy-

trial clock thus began on April 30, 2018.[7] *See* 18 U.S.C. § 3161(c).

### VII. More than 70 non-excludable days elapsed between Mr. Black's first appearance in the Western District of Missouri and his motion to dismiss.

The government argues that even if Mr. Black's appearance in the

Western District of Missouri had started the speedy-trial clock, the statute

would have required exclusion of enough time to satisfy the 70-day period.

We disagree.

---

- to "appear" means "to come formally before an authoritative body" and

- only the court authorized to hold a trial is an "authoritative body."

Appellee's Resp. Br. at 19–20 (citing *Webster's Third New International Dictionary* 103 (1993)). But this argument is mistaken for two reasons.

First, the Western District of Missouri was an "authoritative body": It had the power to accept the plea and to sentence Mr. Black if he pleaded guilty.

Second, we must read the word "appear" in context: Under § 3161(c)(1), the speedy-trial clock starts when "the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. § 3161(c)(1). If the word "appear" tells us which court matters, the clause "the court in which such charge is pending" would be unnecessary. We cannot read § 3161(c) that way because we must "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

[7]     Because the statutory text resolves this question, we do not address Mr. Black's reliance on the rule of lenity.

The Speedy Trial Act requires exclusion of some time periods when calculating the 70-day deadline. 18 U.S.C. §§ 3161(c)(1), (h). Mr. Black and the government agree that the speedy-trial clock ran at least 54 days after his first appearance in the District of Kansas. *See* Appellant's Opening Br. at 9 (arguing that 55 non-excludable days elapsed); Appellee's Resp. Br. at 48 n.9 (arguing that 54 or 55 non-excludable days elapsed).[8] We conclude that more than 16 additional, non-excludable delays elapsed between Mr. Black's arraignment in the Western District of Missouri and his first appearance in the District of Kansas. The trial thus did not start within the 70-day period.

To count the number of non-excludable days, we must consider the statutory grounds for excluding time. Many of these grounds fall under § 3161(h)(1), which excludes "[a]ny period of delay resulting from other

---

[8]     The government and Mr. Black disagree over whether there were 54 or 55 non-excludable days.

Mr. Black appeared in the District of Kansas for the first time on March 22, 2019. The speedy-trial clock then ran 40 days, stopping on May 2, 2019, when Mr. Black moved for a continuance. *See* 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). On May 6, 2019, the court granted the motion for a continuance. The speedy-trial clock thus restarted, but the parties disagree over whether the clock restarted on May 6 or 7. Either way, the clock ran at least another fourteen days, stopping for the initial trial date (May 21, 2019). The trial was continued, triggering another exclusion of time. *See* 18 U.S.C. § 3161(h)(7)(A).

proceedings concerning the defendant." *Id.* Mr. Black concedes that two time segments were excludable under § 3161(h)(1):

1.   The first time segment started with Mr. Black's first appearance in the Western District of Missouri on April 30, 2018 and ended with return of the papers to the District of Kansas on November 15, 2018. This time segment was excludable as delay resulting from a transfer between districts. Appellant's Opening Br. at 10; *see* 18 U.S.C. § 3161(h)(1)(E).

2.   The second time segment consisted of the ten days after the return of his case to the District of Kansas. These days were excludable as a presumptively reasonable delay for transportation between districts. Appellant's Opening Br. at 10; *see* 18 U.S.C. § 3161(h)(1)(F).

The parties thus agree on exclusion of the 209 days in these time segments.

But the government and Mr. Black disagree on how to treat the remaining 116 days that had passed before Mr. Black appeared in Kansas (March 22, 2019).



Mr. Black argues that these 116 days count toward the speedy-trial clock, which would establish a statutory violation. The government argues for the first time that all but 6 of those 116 days are excludable "as delay from 'other proceedings concerning the defendant'" (Mr. Black's sentencing for

20

the Missouri charges).[9] Appellee's Resp. Br. at 47 (quoting 18 U.S.C.

§ 3161(h)(1)). Mr. Black

- disagrees with the government on the merits of this argument, *see* Appellant's Reply Br. at 23–29, and

- argues that the government waived the argument by "inform[ing] the district court below 'that it ha[d] []not identified an exception under Title 18, U.S.C. § 3161(h)'" applicable to Mr. Black's case. *Id.* at 19 (quoting R. vol. 1, at 57).

Though the government did not raise this argument in district court,

we have discretion to affirm on any ground adequately supported by the

record. *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). In

determining whether to exercise this discretion, we consider three factors:

1. whether the issue was fully briefed and argued in the trial and appeals court,

2. "whether the parties have had a fair opportunity to develop the factual record," and

3. "whether in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law."

---

[9]   The parties also disagree on whether the remaining 6 days are excludable. Mr. Black argues that only 10 days are excludable for the time to transport him back to Kansas. The government argues that 16 days were excludable for this purpose. But the government acknowledges that we need not resolve the disagreement over the 6 disputed days because they wouldn't affect the outcome.

*Id.* (cleaned up). All of these factors weigh against affirming on the ground that 110 days are excludable as delay from "other proceedings concerning" Mr. Black.[10]

First, the issue was fully briefed and argued here, but it was not briefed or argued before the district court. In this circumstance, we've considered the first factor to cut against consideration of the new argument for affirmance. *Brown v. Perez*, 835 F.3d 1223, 1236 (10th Cir. 2016).

Second, the parties lacked a fair opportunity to develop the record. Because the government didn't raise this issue in district court, Mr. Black lacked an opportunity to show that the Missouri sentencing hadn't affected prosecution of the Kansas charges. So this factor cuts against consideration of this alternative ground for affirmance.

Third, the government's new argument presents a mixed question of fact and law. The government argues that we need only to decide a legal question: whether § 3161(h)(1) excludes periods of delay resulting from trial and sentencing in another case. But even if we answer *yes*, application of § 3161(h)(1) would turn on a factual question: how much of the delay

---

[10]    Mr. Black not only relies on these factors but also argues that the government waived its new argument by intentionally relinquishing it in district court. The government argues that it mistakenly overlooked the exclusion rather than intentionally relinquish a known right. We need not decide whether the government's omission was inadvertent or intentional: Even if the government had just made a mistake, the three pertinent factors would cut against affirmance on the alternative ground.

resulted from the sentencing? So affirmance on the government's new ground would require factual findings unsupported by the record.

The three factors weigh against consideration of the government's alternative grounds for affirmance. So we decline to consider the government's newly asserted argument for affirmance based on 18 U.S.C. § 3161(h)(1). We thus assume that no exception applies to those 116 days and count them toward the speedy-trial clock.

## VIII. Conclusion

The Speedy Trial Act required Mr. Black's trial to begin within 70 days of his first appearance before a judge in the district where the Kansas charges were pending. When the Kansas charges were transferred from the District of Kansas to the Western District of Missouri, authority over the case shifted from the District of Kansas to the Western District of Missouri. So when Mr. Black appeared in the Western District of Missouri, the Kansas charges were pending there. This appearance thus started the speedy-trial clock.

Because more than 70 non-excludable days passed between Mr. Black's first appearance in the Western District of Missouri and his motion to dismiss under the Speedy Trial Act, the district court should have granted the motion. So we reverse the denial of Mr. Black's motion to dismiss the indictment.

23

We remand for the district court to decide whether the charges should be dismissed with or without prejudice, considering the seriousness of the offense, the facts and circumstances leading to dismissal, and the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice. 18 U.S.C. § 3162(a)(1).

*United States v. Black*, No. 20-3199, Bacharach, J., concurring.

I join the majority opinion, but write separately to address the merits of the government's new argument for affirmance based on 18 U.S.C. § 3161(h)(1). The majority opinion correctly applies our customary factors in deciding not to consider the government's new argument. But even if we were to consider the government's new argument for affirmance, I would reject it on the merits.

The record and judicially noticeable documents reflect five material facts about the period between Mr. Black's guilty plea in Missouri and his first appearance in Kansas:

1.   Mr. Black pleaded guilty to the Missouri charges on October 16, 2018. Min. Entry for Change of Plea Hr'g, *United States v. Black*, No. 2:17-cr-04044-BCW-1 (W.D. Mo. Oct. 17, 2018), ECF No. 34.

2.   The Western District of Missouri accepted that guilty plea on December 18, 2018. Acceptance of Plea of Guilty and Adjudication of Guilt, *United States v. Black*, No. 2:17-cr-04044-BCW-1 (W.D. Mo. Dec. 18, 2018), ECF No. 35.

3.   On February 6, 2019, the Western District of Missouri ordered briefing on sentencing. Notice of Hr'g, *United States v. Black*, No. 2:17-cr-04044-BCW-1 (W.D. Mo. Feb. 6, 2019), ECF No. 39.

4.   The Western District of Missouri conducted a sentencing hearing on March 6, 2019 and sentenced Mr. Black on the same day. Min. Entry for Sentencing Hr'g, *United States v. Black*, No. 2:17-cr-04044-BCW-1 (W.D. Mo. Mar. 6, 2019), ECF No. 43; J. and Commitment, *id.*, ECF No. 44.

5.   Mr. Black made his first appearance in the District of Kansas on March 22, 2019. R. vol. 1, at 4.

The record does not show any proceedings during the 50 days between the court's acceptance of Mr. Black's guilty plea (December 18) and the date that the court ordered briefing on sentencing (February 6).



The government argues that both trial and sentencing in another case trigger § 3161(h)(1) as "delay resulting from other proceedings concerning the defendant." Appellee's Resp. Br. at 46 (quoting 18 U.S.C. § 3161(h)(1)). But even if we were to credit this argument, the delay between December 18 and February 6 would not have resulted

- from a trial on the Missouri charges (because Mr. Black had already pleaded guilty and the court had accepted his plea) or

- sentencing (because the sentencing proceedings had yet to begin).

The government presented no evidence that any proceedings were ongoing during this period, so the speedy-trial clock ran 50 days.[1]

---

[1]    As noted in the majority opinion, the record is sparse on this issue because the government didn't raise § 3161(h)(1) in district court. But if

2

Further delay took place after Mr. Black's appearance in the District of Kansas. As discussed in the majority opinion, Mr. Black argues that this was 55 days; the government says that it may have been 54. *See* Maj. Op. at 19 n.8. We need not decide whether the delay involved 54 or 55 days because either period would push the total delay beyond 70 days.



\* \* \*

The two periods combine to 104 or 105 days, which exceed the speedy-trial limit of 70 days. These delays violated the Speedy Trial Act. So even if we were to consider the government's new argument for affirmance, the delay would have required dismissal of the indictment.

---

we were to consider the issue here, we'd need to assess the government's new argument based on the existing record. That record does not reflect any proceedings during this 50-day period.

20-3199, *United States v. Black*
Phillips, J., dissenting.

I would affirm the district court. It correctly interpreted both Fed. R. Crim. P. 20

and 18 U.S.C. § 3161(c)(1). For ease of reference, I requote these provisions (with strike-

throughs for text not at issue and with italics for key terms in resolving this case):

## Rule 20. Transfer for Plea and Sentence

**(a) Consent to Transfer**. *A prosecution* may be *transferred* from the district
where the indictment ~~or information~~ is pending~~, or from which a warrant on
a complaint has been issued,~~ to the district where the defendant is arrested,
held, or present if:

**(1)** the defendant states in writing a wish to plead guilty ~~or nolo
contendere~~ and to waive trial in the district where the indictment,
~~information, or complaint~~ is pending, consents in writing to *the court's
disposing* of *the case* in the transferee district, and files the statement in the
transferee district; and

**(2)** the United States attorneys in both districts approve the transfer in
writing.

**(b) Clerk's Duties.** After receiving the defendant's statement and the
required approvals, the clerk where the indictment~~, information, or complaint~~
is pending must send the file, or a certified copy, to the clerk in the transferee
district.

**(c) Effect of a Not Guilty Plea.** If the defendant pleads not guilty after the
case has been transferred under Rule 20(a), the clerk must return the papers
to the court where *the prosecution* began, and that court must restore *the
proceeding* to its docket. ~~The defendant's statement that the defendant
wished to plead guilty or nolo contendere is not, in any civil or criminal
proceeding, admissible against the defendant.~~

Fed. R. Crim. P. 20.

## § 3161. Time limits and exclusions

**(c)(1)** In *any case* in which a plea of not guilty is entered, the trial of a
defendant charged in an information or indictment with the commission of

an offense shall commence within seventy days ~~from the filing date (and making public) of the information or indictment, or~~ from the date the defendant has *appeared* before a judicial officer of *the court in which such charge is pending*~~, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.~~

18 U.S.C. § 3161(c)(1).

In interpreting the provisions in Mr. Black's case, it helps to consider the three potential outcomes after his Kansas prosecution was transferred.

First, if Mr. Black had carried through with his written wish to enter a guilty plea, he obviously would have been sentenced without a trial. His guilty plea would have left no reason to consult the Speedy Trial Act.

Second, because Mr. Black instead declined to carry through on his written wish to enter a guilty plea, the sole option was a trial, which requires us to consider the Speedy Trial Act's terms under that circumstance. After Mr. Black pleaded not guilty to the Kansas charges, Rule 20 required that the papers (and the transferred prosecution) be returned to Kansas. This left matters where they stood before Mr. Black persuaded Kansas and Missouri that he wished to plead guilty. He awaited disposition of his Missouri charges, and Kansas and Colorado[1] awaited his transport to their states to face their charges. The net effect of the wasted transfer was to leave Mr. Black in the position he occupied before the transfer—no better off, no worse off.

---

[1] Ultimately, Colorado chose not to return Mr. Black to Colorado to face the charges.

Rule 20 and § 3161(c)(1), quoted above, arrive at that sensible result. After Mr. Black's not-guilty plea, Kansas waited for Mr. Black, and Mr. Black waited for Kansas. Kansas had no need to reindict Mr. Black—its indictment (and the indictment's charges) remained pending in Kansas. Rule 20 simply allowed Kansas and Missouri to agree that Kansas would dispose of its case by obtaining Mr. Black's guilty pleas and sentencing in Missouri. Contrary to the majority's view, Rule 20 allows *Kansas* to dispose of the Kansas charges in Missouri.

Mr. Black's Kansas indictment (and its charges) never became a Missouri indictment. The majority considers it important that Missouri opened a docket number to keep track of the happenings in Missouri court. But this just allows orderly record keeping. The alternative would be for a transferee state to stack case filings on a bare bookshelf or desk corner.

Two of our fellow circuit courts have ruled that the charges remain pending in the transferor court in Rule 20 cases. *See United States v. Wickham*, 30 F.3d 1252, 1253–54 (9th Cir. 1994) (concluding in a case similar to ours—the defendant obtained a transfer, pleaded guilty, but then withdrew the guilty plea—that the transferor court was the one in which charges were pending for purposes of 18 U.S.C. § 3161(c)(1)); *United States v. Young*, 814 F.3d 392, 395 (7th Cir. 1987) (concluding in a case like ours—the defendant obtained a transfer but didn't plead guilty—that the transferee court was not the "court in which the charge was pending" for purposes of 18 U.S.C. § 3161(c)(1)). Though it finds fault with the two decisions, the majority has no cases supporting its contrary view.

3

Because the Kansas charges always remained pending in Kansas, Mr. Black first "appeared before a judicial officer of the court in which such charge[s] [were] pending" when he first appeared in Kansas federal court. That reading, supported by the plain text, resolves Mr. Black's speedy-trial claim in the government's favor.

This conclusion is buttressed by the third possibility open to a defendant in Mr. Black's position, though Mr. Black didn't avail himself of it. A defendant in Mr. Black's original position (charged in multiple federal districts) can seek transfer of his case for not just a change of plea and sentencing but for *trial*. Though Mr. Black could have sought this result without stating a wish to plead guilty, I see nothing that would prevent him from seeking transfer for trial after he declined to plead guilty. Here is the applicable rule (again, with the language not pertinent to Mr. Black's situation stricken and key language italicized):

### Rule 21. Transfer for Trial

(a) ~~For Prejudice.~~ ~~Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.~~

(b) **For convenience.** Upon the defendant's motion, the court *may transfer the proceeding, or one or more counts*, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

(c) **Proceedings on Transfer.** When the court orders a transfer, the clerk must send to the transferee district the file, or a certified copy, and any bail taken. *The prosecution* will then continue in the transferee district.

(d) **Time to File a Motion to Transfer.** A motion to transfer may be made *at or before arraignment or at any other time the court or these rules prescribe*.

4

Fed. R. Crim. P. 21.

Here, the Kansas court would already have sent to Missouri "the file, or a certified copy." Once the Kansas court relinquished a Kansas trial, the Kansas charges would become pending in Missouri (otherwise the Speedy Trial Act's clock wouldn't ever begin ticking). In such a circumstance, the speedy-trial clock would have begun on the day Mr. Black first appeared in Missouri (which would come later than his Kansas indictment). So Missouri would have 70 days from then to try Mr. Black, with any additional time excluded under § 3161(h). But absent transfer to Missouri for trial, the speedy-trial clock for a Kansas trial would not begin running until he appeared before a Kansas federal judge to face his pending Kansas charges.

One more point merits discussion. Neither the district court nor the government ventured into "policy" by raising practical concerns with three districts (Missouri, Kansas, and Colorado) shuttling Mr. Black back and forth across a speedy-trial minefield. Instead, I think those practical concerns merely provide support for the correctness of the district court's plain-text reading. They also support a view that Congress never intended the majority's result in Mr. Black's case. Instead, given Congress's plain text, I think Congress sensibly intended the result the district court arrived at. Unfortunately, I fear that the majority's opinion will bring a halt to most out-of-district transfers. What U.S. Attorney would agree to a Rule 20 transfer, risking the obvious hassles and possible case consequences Mr. Black now presents? Better to wait its turn.

5